**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OPEN NETWORK SOLUTIONS, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. TBD |
| | ) | |
| | ) | |
| NCR CORPORATION, | ) | *JURY TRIAL DEMANDED* |
| | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff Open Network Solutions, Inc. ("ONS") files this complaint for infringement of

U.S. Patent Nos. 6,850,996 ("the '996 patent"), 6,745,259 ("the '259 patent"), and 6,907,476

("the '476 patent") under 35 U.S.C. § 271 against defendant NCR Corporation ("NCR").

Plaintiff seeks damages for NCR's infringement.

Plaintiff alleges as follows:

**PARTIES**

1.      Plaintiff Open Network Solutions, Inc. is a company organized under the laws of the

State of Delaware. The address of the corporation's registered office in the State of Delaware is

2711 Centerville Road, Suite 400, Wilmington, DE 19808.

2.      Upon information and belief and after a reasonable opportunity for further discovery,

Defendant NCR Corporation is a company organized and existing under the laws of Maryland,

having a principal place of business at 3097 Satellite Blvd #100, Duluth, Georgia 30096-1242.

NCR is registered to do business in the state of Delaware and can be served with process through

its agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange

Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United

States, 35 U.S.C. § 1 et seq., alleging infringement of the '996, '259, and '476 patents. Copies of

the patents are attached hereto as Exhibits A, B, and C and are incorporated herein by reference

in their entireties.

4.      The Court has exclusive subject matter jurisdiction over this action under 28 U.S.C.

§§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over NCR because NCR has conducted business in

this District and upon information and belief has infringed, contributed to infringement of, and/or

actively induced others to infringe the '996, '259, and '476 patents in this District as alleged in

this Complaint. Further, NCR is a registered entity in this District as alleged in this Complaint.

Finally, NCR has brought and litigated patent infringement issues in this District in the past. *See*,

*e.g.*, *NCR Corp. v. Netscape Comm'ns Corp.*, No. 1:99-cv-00621-RRM.

6.      Venue is proper under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b).

## PATENTS-IN-SUIT

7.      The '996 patent entitled "System and method for enabling transactions between a web

server and an automated teller machine over the Internet" was duly and legally issued to inventor

Richard Hiers Wagner on February 1, 2005. See Exhibit A.

8.      The '259 patent entitled "Open network system for I/O operation including a common

gateway interface and an extended open network protocol with non-standard I/O devices

utilizing device and identifier for operation to be performed with device" was duly and legally issued to inventor Richard Hiers Wagner on June 1, 2004. See Exhibit B.

9.      The '476 patent entitled "Open network system and method for I/O operations with non-standard I/O devices using an extended open network protocol" was duly and legally issued to inventor Mr. Wagner on June 14, 2005. See Exhibit C.

10.     In the early 1990s, Mr. Wagner recognized that the Internet provided a network where nontraditional devices could communicate and share information. While traditional computers (e.g., a combination of a QWERTY keyboard and display screen) had well-known language protocols in place to facilitate the exchange of information on the Internet, there was a need for the ability for nontraditional devices (e.g., those lacking both a QWERTY keyboard and display screen) to communicate on the network as well.

11.     Mr. Wagner dedicated himself to inventing the language protocols necessary to open the network to all manner of intelligent electronic devices.

12.     The idea was to define an architecture for pervasive peer-to-peer network connectivity of intelligent appliances, wireless devices, and PCs of all form factors that would be easy to use and flexible for connectivity to *ad hoc* or unmanaged networks whether in the home, a small business, public spaces, or attached to the Internet.

13.     Mr. Wagner's envisioned architecture is designed to support zero-configuration, "invisible" networking, and automatic discovery for a breadth of device categories. This means a device can dynamically join a network, obtain an IP address, convey its capabilities, and learn about the presence and capabilities of other devices.

14.     Mr. Wagner's inventions are described in the '996, '259, and '476 patents (among other patents).

15.     All right, title and interest to these patents was initially assigned to the company

Datascape, Inc.

16.     The '996, '259, and '476 patents, and the patent family from which they are members,

are battle-tested; they have been asserted against over 40 companies in patent infringement

actions resulting in millions of dollars in settlements.

17.     In addition, Mr. Wagner's patents have been cited by the United States Patent Office

against other applications over 1000 times and have held up against hundreds of pieces of prior

art. Additionally, both the '259 patent and '476 patents have survived reexamination proceedings

from the United States Patent Office.

18.     On April 15, 2014, Datascape assigned the '996, '259, and '476 patents to ONS, a wholly

owned subsidiary of WiLAN, Inc. ("WiLAN").

19.     WiLAN and its wholly owned subsidiaries partner with individual inventors and small

companies with limited resources and help them contend against large, unauthorized infringers

such as NCR.

**INFRINGING GOODS/SERVICES**

20.     It has recently come to ONS's attention that Defendant NCR infringes the '996, '259, and

'476 patents.

21.     NCR manufactures, sells, offers for sale, and uses the SelfServ line of ATMs, many of

which use the IFX Terminal Handler ("SelfServ ATM"). Upon information and belief, the

SelfServ ATM models which are compatible with NCR's Aptra Edge Software, allowing

utilization of the IFX Terminal Handler, include but are not limited to: SelfServ 14, SelfServ 16,

SelfServ 22, SelfServ 25, SelfServ 31, SelfServ 35, and SelfServ 38.

22.     NCR's SelfServ ATMs utilizing NCR's Aptra Edge Software fall within the scope of the '996, '259, and '476 patents.

23.     The '996 patent discloses a system and method for implementing financial transactions over the Internet.

24.     For example, claim 1 of the '996 patent provides:

> An automated teller machine (ATM) for implementing financial transactions with a server over an open network comprising:
>
> a computer having memory and a processor, the computer being coupled to an open network for communication with a server;
>
> at least one non-standard input/output (I/O) device coupled to the computer for performing at least a portion of a financial transaction; and
>
> a computer program in the memory of the computer and executed by the processor for interpreting extended open network protocol statements received over the open network to control the at least one non-standard I/O device to which the computer is coupled.

Exhibit A, '996 patent, col. 19, ln 62 to col. 20, ln 9.

25.     Similarly, the '259 patent discloses a system that permits non-standard, (i.e. non-desktop/laptop computers) devices to communicate over an open network.

26.     For example, claim 1 of the '259 patent provides:

> A system for supporting communication between processing systems and non-standard I/O (input/output) devices over an open network comprising:
>
> a server that processes extended open network statements, said server being communicatively coupled to an open network;
>
> a first non-standard I/O device communicatively coupled to said open network; and
>
> a client program executing within said first non-standard I/O device for processing extended open network statements so that said first non-standard I/O device may communicate with said server.

Exhibit B, '259 patent, col. 19, ln 65 to col. 20, ln 10.

27.     Additionally, claim 14 of the '476 patent provides:

A method for processing extended open network protocol statements so a non-standard I/O device may communicate with a processing system over an open network comprising:

receiving extended open network protocol statements over an open network;

and processing said received extended open network protocol statements to control an operation associated with a non-standard I/O device.

Exhibit C, '476 patent, col. 22, ln 6 to ln 14.

28.     NCR's SelfServ ATMs are computers/non-standard I/O device which utilizes non-standard I/O devices such as receipt printers, PIN pads, card readers, or touch screens.

29.     Generally, NCR's SelfServ ATMs utilizing NCR's Aptra Edge Software communicate with open networks through the use of extended open network protocol statements. NCR's SelfServ ATM, particularly when utilizing NCR's Aptra Edge Software, also utilizes a client program (e.g., IFX Terminal Handler) for such communications.

30.     Given this, NCR's SelfServ ATMs utilizing NCR's Aptra Edge Software fall within the scope of the claims of the '996, '259 and, '476 patents.

31.     Upon information and belief, NCR has been aware of Mr. Wagner's family of patents directed to this technology, including one or more of the '996, '259, and '476 patents asserted herein, since at least October 9, 2012, when a related patent of Mr. Wagner's, 6,684,269, was cited against NCR's U.S. Patent No. 8,370,220.

32.     Given NCR's knowledge of at least one other Wagner patent, upon information and belief, NCR was also aware of the '996, '259 and, '476 patents prior to the filing of this suit.

## COUNT I

### NCR'S PATENT INFRINGEMENT
### UNDER 35 U.S.C. § 271 OF THE '996 PATENT

33.     ONS incorporates by reference the allegations of paragraphs 1–32.

34.     The '996 patent was duly and legally issued by the United States Patent and Trademark Office on February 1, 2005, after a full and fair examination.

35.     Plaintiff is the assignee of all rights, title, and interest in and to the '996 patent and possesses all rights of recovery under the '996 patent.

36.     NCR has directly infringed the '996 patent at a minimum by making, using, offering to sell, and selling within the United States products and services that practice the inventions of the '996 patent, namely its NCR's SelfServ ATMs utilizing NCR's Aptra Edge Software that implement financial transactions over the Internet, and these products/services have no substantial non-infringing uses.

37.     NCR has contributorily infringed the '996 patent and induced infringement of the '996 patent after the filing of the complaint.

38.     Given its knowledge of at least one other Wagner patent, upon information and belief, NCR was aware of the '996 patent prior to the filing of this suit.

39.     At a minimum, NCR was aware of the '996 patent as of the filing of this Complaint.

40.     Despite knowledge of the patent and its infringement, NCR continues to manufacture, make, offer for sale, and sell goods that violate the patent.

41.     In addition and upon belief, NCR encourages its customers to operate the products in an infringing manner.

42.     NCR has caused and will continue to cause ONS damage by virtue of its continuing infringement.

43.     ONS is entitled to recover from NCR the damages sustained by ONS as a result of NCR's acts in an amount subject to proof at trial.

44.     Upon information and belief and after an opportunity for further discovery, NCR's infringement of the '996 patent is willful and deliberate prior to the filing of this Complaint.

## COUNT II

### NCR'S PATENT INFRINGEMENT
### UNDER 35 U.S.C. § 271 OF THE '259 PATENT

45.     ONS incorporates by reference the allegations of paragraphs 1–44.

46.     The '259 patent was duly and legally issued by the United States Patent and Trademark Office on June 1, 2004, after full and fair examination. A reexamination certificate issued on February 18, 2014.

47.     Plaintiff is the assignee of all rights, title, and interest in and to the '259 patent and possesses all rights of recovery under the '259 patent.

48.     NCR has directly infringed the '259 patent at a minimum by making, using, offering to sell, and selling within the United States products and services that practice the inventions of the '259 patent, namely non-standard products that access content over the Internet, and these products/services have no substantial non-infringing uses.

49.     NCR has contributorily infringed the '259 patent and induced infringement of the '259 patent after the filing of the complaint.

50.     Given its knowledge of at least one other Wagner patent, upon information and belief, NCR was aware of the '259 patent prior to the filing of this suit.

51.     At a minimum, NCR was aware of the '259 patent as of the filing of this Complaint.

52.     Despite knowledge of the patent and its infringement, NCR continues to manufacture, make, offer for sale, and sell goods that violate the patent.

53.     In addition and upon belief, NCR encourages its customers to operate the products in an infringing manner.

54.     NCR has caused and will continue to cause ONS damage by virtue of its continuing infringement.

55.     ONS is entitled to recover from NCR the damages sustained by ONS as a result of NCR's acts in an amount subject to proof at trial.

56.     Upon information and belief and after an opportunity for further discovery, NCR's infringement of the '259 patent is willful and deliberate prior to the filing of the Complaint.

**COUNT III**

**NCR'S PATENT INFRINGEMENT**
**UNDER 35 U.S.C. § 271 OF THE '476 PATENT**

57.     ONS incorporates by reference the allegations of paragraphs 1–56.

58.     The '476 patent was duly and legally issued by the United States Patent and Trademark Office on June 14, 2005 after full and fair examination. The '476 patent also survived reexamination proceedings from the United States Patent Office which ended in April 2014.

59.     Plaintiff is the assignee of all rights, title, and interest in and to the '476 patent and possesses all rights of recovery under the '476 patent.

60.     NCR has directly infringed the '476 patent at a minimum by making, using, offering to sell, and selling within the United States products and services that practice the inventions of the '476 patent, namely non-standard products that access content over the Internet, and these products/services have no substantial non-infringing uses.

61.     NCR has contributorily infringed the '476 patent and induced infringement of the '476 patent after the filing of the complaint.

62.     Given its knowledge of at least one other Wagner patent, upon information and belief,

NCR was aware of the '476 patent prior to the filing of this suit.

63.     At a minimum, NCR was aware of the '476 patent as of the filing of this Complaint.

64.     Despite knowledge of the patent and its infringement, NCR continues to manufacture,

make, offer for sale, and sell goods that violate the patent.

65.     In addition and upon belief, NCR encourages its customers to operate the products in an

infringing manner.

66.     NCR has caused and will continue to cause ONS damage by virtue of its continuing

infringement.

67.     ONS is entitled to recover from NCR the damages sustained by ONS as a result of NCR's

acts in an amount subject to proof at trial.

68.     Upon information and belief and after an opportunity for further discovery, NCR's

infringement of the '476 patent is willful and deliberate prior to the filing of this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Open Network Solutions, Inc. respectfully requests that the Court enter a

judgment as follows:

A.     A judgment that NCR has directly infringed the '996, '259, and '476 patents;

contributorily infringed the '996, '259, and '476 patents; induced infringement of

the '996, '259, and '476 patents; and willfully infringed the '996, '259, and '476

patents;

B.     A judgment and order requiring NCR to pay Plaintiff damages under 35 U.S.C.

§ 284, including supplemental damages for any continuing post-verdict

infringement up until entry of the final judgment, with an accounting, as needed,

and treble damages for willful infringement as provided by 35 U.S.C. § 284;

C.      A judgment and order requiring NCR to pay Plaintiff pre-judgment and post-

judgment interest on the damages awarded;

D.      A judgment and order requiring NCR to pay Plaintiff the costs of this action

(including all disbursements) and attorney's fees as provided by 35 U.S.C. § 285;

and

E.      Such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be determined by jury.


Dated: June 3, 2014


|  |  |
|---|---|
|  | /s/ David W. deBruin |
| *Of Counsel:* | David W. deBruin (#4846) |
|  | THE DEBRUIN FIRM LLC |
| Paul A. Lesko (*admission forthcoming*) | 405 N. King Street I Suite 440 |
| Sarah S. Burns (*admission forthcoming*) | Wilmington, DE 19801 |
| SIMMONS BROWDER GIANARIS | (302) 660-2582 |
| ANGELIDES & BARNERD LLC | ddebruin@thedebruinfirm.com |
| One Court Street |  |
| Alton, IL 62002 | *Attorneys for Plaintiff* |
| (618) 259-2222 |  |
| plesko@simmonsfirm.com |  |
| sburns@simmonsfirm.com |  |